MARY'S OPINION HEADING 








NO. 12-09-00095-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

JARROD TROY
BARTON,                         §                      APPEAL FROM THE 392ND

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      HENDERSON
 COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

Appellant
Jarrod Troy Barton appeals his conviction for possession of a controlled
substance, methamphetamine, in an amount of less than one gram.  In two issues,
Appellant contends that the trial court erred in failing to suppress certain
evidence, and that the evidence is legally and factually insufficient to
support his conviction.  We affirm.

 

Background

Appellant
was charged by indictment with possession of a controlled substance,
methamphetamine, in an amount of less than one gram, including adulterants and
dilutants.[1]  The indictment
also included two enhancement paragraphs, alleging that Appellant had been
twice convicted of a felony prior to the commission of the charged offense.  Appellant
pleaded “not guilty.”  After the trial, the jury found Appellant guilty of
possession of a controlled substance as charged in the indictment.  Appellant
elected to have punishment assessed by the trial court and was sentenced to ten
years of imprisonment.[2]  However, the
trial court suspended imposition of the sentence and placed Appellant on
community supervision for ten years. [3] This appeal
followed.

Motion to Suppress

In
his first issue, Appellant argues that the trial court erred in denying his
motion to suppress because the search conducted by the officers violated his
rights under the Fourth Amendment to the United States Constitution.  The State
contends that Appellant lacked standing to contest the search because he did
not own the home or have any possessory right to it.

Facts

Before
trial, Appellant moved to suppress any statements concerning the contraband
seized from a mobile home by law enforcement until a hearing was held to
determine its admissibility.  The trial court held a hearing on the motion.
Sergeant Richard Fulton, a criminal investigator with the Texas Department of
Public Safety, was the only person who testified at the hearing.  Fulton
testified that, on the date of the search, he was conducting surveillance on a
mobile home, attempting to locate Mickey Shane Hargett, a fugitive.  The front
door of the home was “wide open” even though it was December, and a steady
stream of men and women were coming in and out of the home.  Fulton knew that
Hargett had a narcotics background and believed that the people coming in and
out of the home were part of the drug element.  Someone matching Hargett’s
description appeared on the front porch. Fulton verified that the person on the
front porch matched Hargett’s description, requested backup from the Chandler
Police Department, and arrested Hargett.  The front door of the mobile home was
still open, and several men were in close proximity to the front door.
According to Fulton, these men were in a direct line of contact or “firing.”

Two
officers from the Chandler Police Department entered the mobile home to
ascertain that no one in the immediate area had any weapons.  Fulton checked
the persons near the front door for weapons.  He heard one of the officers ask
why someone was hiding, sounding “spooked.” Fulton looked to his left and
noticed an adjoining bedroom that did not have a door. At that moment, a woman
came out of the bedroom saying, “[I]t’s okay,” and that she was Jennifer
Anderson.  Fulton knew that Anderson was the “main” resident of the home, who
paid the water bills.  Another officer told Fulton that he could see needles on
the bed in the bedroom. At that point, Fulton concluded that he needed consent
to search the mobile home.  He confronted Anderson who gave him consent to
search.  During the search, Fulton observed signs of narcotic activity in the
bedroom, including baggies and needles.  Fulton and the other officers decided
to summon narcotics officers from the sheriff’s department.  When the narcotics
officers arrived, Fulton took Hargett to jail.  Later, Appellant was
found hiding in a closet of the bedroom.  He was arrested for possession of a
controlled substance after contraband was found in that closet.  After hearing
argument of counsel, the trial court denied Appellant’s motion to suppress.

Applicable
Law

The
purpose of the Fourth Amendment Ais
to safeguard an individual=s legitimate
expectation of privacy from unreasonable governmental intrusions.@
 Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)
(quoting Richardson v. State, 865 S.W.2d 944, 948 (Tex. Crim.
App. 1993)).  An accused has standing to contest a search only if he had a
legitimate expectation of privacy in the place invaded.  Rakas v.
Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387
(1978); Granados v. State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).
The accused has the burden of proving facts establishing a legitimate
expectation of privacy. Calloway v. State, 743 S.W.2d 645, 650
(Tex. Crim. App. 1988). The accused may carry his burden by proving that, by
his conduct, he exhibited an actual subjective expectation of privacy, i.e., a
genuine intention to preserve something as private. Smith v. Maryland,
442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979); Granados,
85 S.W.3d at 223; Villarreal, 935 S.W.2d at 138.  In other words,
he must exhibit the measures he took to protect the privacy of the property in
question.  See Pennywell v. State, 84 S.W.3d 841, 844 (Tex.
App.—Houston [1st Dist.] 2002), pet. granted, remanded, 125 S.W.3d 472
(Tex. Crim. App. 2003). 

If
he proves that he exhibited an actual subjective expectation of privacy, then
he must prove that circumstances existed under which society was prepared to
recognize his subjective expectation as objectively reasonable. Smith,
442 U.S. at 740, 99 S.Ct. at 2580; Parker v. State, 182 S.W.3d
923, 926 (Tex. Crim. App. 2006); Granados, 85 S.W.3d at 223; Villarreal,
935 S.W.2d at 138.  Several factors are relevant to the court’s determination
of whether the accused’s subjective expectation was one that society was
prepared to recognize as objectively reasonable: (1) whether the accused had a
property or possessory interest in the place invaded; (2) whether he was
legitimately in the place invaded; (3) whether he had complete dominion or
control and the right to exclude others; (4) whether, prior to the intrusion,
he took normal precautions customarily taken by those seeking privacy; (5)
whether he put the place to some private use; and (6) whether his claim of
privacy is consistent with historical notions of privacy.  Granados,
85 S.W.3d at 223; Villarreal, 935 S.W.2d at 138.  This list of
factors is not exhaustive, however, and none is dispositive of a particular
assertion of privacy.  Granados, 85 S.W.3d at 223. 
Rather, we examine the circumstances surrounding the search in their totality.  Id.

Analysis

The
evidence shows that Appellant was a guest in the mobile home who lacked any
possessory or propriety interest in the premises.  See Villareal
v. State, 893 S.W.2d 559, 561 (Tex. App.—Houston [1st Dist.] 1994), aff’d,
935 S.W.2d 134 (Tex. Crim. App. 1996).  Appellant has no valid expectation of
privacy in a home where he is simply a guest.  See id.  Moreover,
he must exhibit the measures he took to protect the privacy of the property in
question.  See Pennywell, 84 S.W.3d at 844.  The evidence shows
that the front door of the mobile home was “wide open” and that a steady stream
of men and women were coming in and out of the home.  There is no evidence that
Appellant attempted to control the entrances and exits of the premises and,
thus, protect the privacy of the premises. See id.; Villareal,
893 S.W.2d at 561.  Finally, Appellant was discovered hiding in a bedroom
closet where the contraband was located.  Based upon the totality of the
circumstances, we cannot say that Appellant showed a genuine intention to
preserve something as private or that he had taken measures to protect his
privacy.  See Granados, 85 S.W.3d at 223; Villarreal,
935 S.W.2d at 138; Pennywell, 84 S.W.3d at 844.  From this
evidence, Appellant failed to show that he had a subjective expectation of
privacy.  See Smith, 442 U.S. at 740, 99 S. Ct. at 2580; Granados,
85 S.W.3d at 223; Villarreal, 935 S.W.2d at 138.

Even
if Appellant had a subjective expectation of privacy, he must also prove that
his subjective expectation was objectively reasonable.  See Smith,
442 U.S. at 740, 99 S. Ct. at 2580; Parker, 182 S.W.3d at 926; Granados,
85 S.W.3d at 223; Villarreal, 935 S.W.2d at 138. The evidence
shows that Appellant may have been in the mobile home legitimately, but that he
did not own the mobile home or have a property or proprietary interest in it.  The
front door of the mobile home was “wide open” and a steady stream of men and
women were coming in and out of the home.  There is no evidence Appellant
controlled the premises or had the right to exclude others. Further, there is
no evidence that he used the mobile home for some private use. Finally, we
cannot say that hiding in a bedroom closet with contraband gives rise to a claim
of privacy consistent with historical notions of privacy.  From this evidence,
Appellant failed to show that circumstances existed under which society was
prepared to recognize his subjective expectation as objectively reasonable.  See
Smith, 442 U.S. at 740, 99 S. Ct. at 2580; Parker,
182 S.W.3d at 926; Granados, 85 S.W.3d at 223; Villarreal,
935 S.W.2d at 138.  Consequently, Appellant has no standing to contest the
search because he did not prove facts showing that he had a legitimate
expectation of privacy. See Calloway, 743 S.W.2d at 650.

However,
even if he had standing to challenge the search, Appellant would not prevail.
Appellant argues that the officers’ “protective sweep” was illegal because
there was no testimony at the hearing to justify the officers’ entry into the
mobile home. He contends that the State failed to show that the officers
possessed a reasonable belief based on specific facts that the individuals
inside the mobile home posed a threat.  A “protective sweep” is a “quick and
limited search of the premises, incident to an arrest and conducted to protect
the safety of police officers or others.”  Reasor v. State, 12
S.W.3d 813, 815 (Tex. Crim. App. 2000) (quoting Maryland v. Buie,
494 U.S. 325, 328, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)).  When conducting
an in-home arrest, a police officer may sweep the house only if he possesses an
objectively reasonable belief, based on specific and articulable facts, that a
person in that area poses a danger to that police officer or to other people in
the area.  See id. at 817. 

Here,
a steady stream of men and women were coming in and out of the mobile home.
Based on Hargett’s narcotics background, Fulton believed that those persons
were part of the drug element.  Fulton stated that after he arrested Hargett, the
front door of the mobile home was still open, and that several men inside were
in close proximity to the front door in a direct line of contact or “firing.”  Further,
he stated that by arresting Hargett, he and the other officers were “becoming a
spectacle.”  At that time, Fulton and the two other officers entered the home
to check the persons inside for weapons.  Because Fulton believed that the
persons in close proximity to the front door of the mobile home represented the
drug element and were in a direct line of contact or “firing” upon the
officers, he showed an objectively reasonable belief that those persons posed a
danger to him and the other officers.  See id.  Thus, even
if Appellant had standing to contest the search, the “protective sweep” was not
illegal.

Appellant=s
first issue is overruled.

 

Evidentiary Sufficiency

In
his second issue, Appellant argues that the evidence fails to show he exercised
care, custody, control, or management of the methamphetamine and is, therefore,
legally and factually insufficient to support his conviction.  More
specifically, he argues that the only link between him and the contraband were
that they were both found in the closet. The State disagrees. 

Facts

At
trial, Fulton repeated the testimony he had given at the suppression hearing.
Don Yarbrough, a detective assigned to the Henderson County Drug Enforcement
Unit, testified that a search of the bedroom revealed rolling papers, small
baggies containing a brown substance, some pipes or paraphernalia for
marijuana, and a small amount of contraband.  According to Yarbrough, Anderson
handed him a slip of paper that stated someone else was in the home. Yarbrough
“kind of motion[ed] for her where,” and she nodded her head towards the
bedroom. He stated further that, at that point, he and two other officers went to
the closet in the bedroom where they discovered Appellant hiding in the corner
of the closet behind a pile of clothing and a rod of hanging clothes.  Yarbrough
stated that Appellant had over $1,500 in cash in his wallet, but no contraband.
 Appellant told Yarbrough that he had just been paid by his employer. However,
when Yarbrough checked with Appellant’s employer, he discovered that Appellant
had not worked in several weeks and that he had been paid approximately $400
for that work. 

Joseph
Lee Miller, another investigator with the Henderson County Drug Enforcement
Unit, discovered a black zipper bag in one corner of the bedroom closet. Botie
Hillhouse, an investigator with the Henderson County Drug Enforcement Unit,
testified that the bag contained coins, empty baggies, a set of digital scales,
a baggie with some pills, a hypodermic needle, a spoon, and baggies containing
suspected narcotics.  A forensic scientist with the Texas Department of Public
Safety at the Tyler Regional Crime Laboratory testified that the baggie had
0.66 gram of a substance containing methamphetamine, and the spoon had 0.02
gram of a substance containing methamphetamine. 

Standard
of Review

ALegal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.@ 
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.BSan
Antonio 1999, pet. ref=d) (citing Jackson
v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed.2d
560 (1979)).  The standard of review is whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; LaCour
v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000).  The evidence is
viewed in the light most favorable to the verdict.  Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; LaCour, 8 S.W.3d at 671.  The
jury is the sole judge of the credibility of witnesses and of the weight to be
given their testimony.  Barnes v. State, 876 S.W.2d 316, 321
(Tex. Crim. App. 1994).  If a reviewing court finds the evidence legally
insufficient to support a conviction, the result is an acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed.2d
652 (1982).  

In
conducting a factual sufficiency review of the evidence supporting the jury=s
verdict, we begin our review with the assumption that the evidence is legally
sufficient under Jackson. Laster v. State, 275
S.W.3d 512, 518 (Tex. Crim. App. 2009).  Evidence that is legally sufficient,
however, can be deemed factually insufficient in two ways: (1) the evidence
supporting the conviction is “too weak” to support the factfinder’s verdict, or
(2) considering conflicting evidence, the factfinder’s verdict is “against the
great weight and preponderance of the evidence.”  Id. (quoting Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)).  In
implementing this standard, we must consider all of the evidence in a neutral
light, as opposed to in a light most favorable to the verdict.  Id.  Further,
we may only find the evidence factually insufficient when necessary to “prevent
manifest injustice.”  Id. (quoting Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Finally, we must explain why the
evidence is too weak to support the verdict or explain why the conflicting
evidence greatly weighs against the verdict.  Id.

Although
we are authorized to disagree with the jury=s
determination, even if probative evidence exists that supports the verdict, see
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our
evaluation should not substantially intrude upon the jury=s
role as the sole judge of the weight and credibility of witness testimony. Santellan
v. State, 939 S.W.2d 155 at 164 (Tex. Crim. App. 1997).  It is not
enough that we might harbor a subjective level of reasonable doubt to overturn
a conviction that is founded on legally sufficient evidence.  See Watson,
204 S.W.3d at 417.  We cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury=s
resolution of the conflict.  See id. 

Elements
of the Offense

In
this case, Appellant was convicted for possession of a controlled substance,
methamphetamine, in the amount of less than one gram.  See Tex. Health & Safety Code Ann. § 481.112(a),
(b) (Vernon 2010).  The elements of the offense are (1) a person (2) knowingly
or intentionally (3) possesses (4) a controlled substance listed in Penalty
Group I, which includes methamphetamine.  See Tex. Health & Safety Code Ann. § 481.102(6) (Vernon 2010);
id. § 481.112(a). 
To support a conviction for possession of a controlled substance, the state
must prove (1) that the accused exercised care, control, or custody over the
substance, and (2) that the accused was conscious of his connection with the
substance and knew what it was.  Evans v. State, 202 S.W.3d 158,
161 (Tex. Crim. App. 2006); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  The evidence may be direct or circumstantial.  Evans,
202 S.W.3d at 162; Brown, 911 S.W.2d at 747.  Regardless, the
evidence must establish that Athe accused=s
connection with the drug was more than just fortuitous.@ 
See Brown, 911 S.W.2d at 747.  

The
state may prove that a person Aknowingly@
possessed a controlled substance by introducing evidence that positively links
the accused to the contraband. See Brown, 911 S.W.2d at
747.  The nexus need not eliminate every other Aoutstanding
reasonable hypothesis@ except the accused=s
guilt.  Brown, 911 S.W.2d at 748.  If the accused is not in
exclusive possession of the place where the substance is found, it cannot be
concluded that the accused had knowledge of and control over the contraband
unless there are additional independent facts and circumstances that link the
accused to the contraband.  Poindexter v. State, 153 S.W.3d 402,
406 (Tex. Crim. App. 2005).  This is not a legal rule, but simply a shorthand
method of proving that the accused possessed the contraband knowingly or
intentionally.  Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.BHouston
[1st Dist.] 2002, pet. ref’d).  The quantity of factors is less decisive than
the reasonable impact of the factors in substantiating the elements of the
offense.  Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.BHouston
[1st Dist.] 1994, pet. ref=d); see also Wallace
v. State, 932 S.W.2d 519, 524 (Tex. App.BTyler
1995, pet. ref=d).

Factors
that may be considered in developing a link between the accused and the
contraband are (1) whether the accused was observed in a suspicious place under
suspicious circumstances; (2) whether the accused owned or had the right to
possess the place where drugs were found; (3) whether there was contraband or
drug paraphernalia present; (4) whether the conduct of the accused indicated a
consciousness of guilt; (5) whether the location of the contraband was
enclosed; (6) whether the accused was in proximity to the contraband; (7)
whether the accused had accessibility to the narcotic; (8) whether the amount
of contraband was large enough to indicate the accused knew of its existence;
(9) whether the accused was found with a large amount of cash; and (10) whether
the accused possessed other contraband or narcotics when arrested.  Evans,
202 S.W.3d at 162 n.12; Willis v. State, 192 S.W.3d 585, 593
(Tex. App.—Tyler 2006, pet. ref’d); Villegas v. State, 871 S.W.2d
894, 896-97 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).

Analysis

            Because
Appellant was not in exclusive possession of the mobile home where the
contraband was found, we must determine whether there are additional
independent facts and circumstances that link Appellant to the contraband.  See
Poindexter, 153 S.W.3d at 406. The evidence shows that Appellant was
in a mobile home with persons that Fulton believed indicated drug traffic and
that he did not own or have the right to possess the place where the contraband
was found.  Further, contraband and drug paraphernalia were present in the
bedroom and Appellant was found hiding in a closet in that bedroom. In hiding
from the police, Appellant indicated a consciousness of guilt.  Additional
contraband and drug paraphernalia were in a bag in the closet where Appellant
was found.  Further, Appellant had $1,500 of unexplained cash on his person.  These
links between Appellant and the contraband establish that he knowingly and
intentionally possessed a controlled substance.  Therefore, viewing the
evidence in the light most favorable to the jury=s
verdict, we conclude that a rational trier of fact could have found the
elements of possession of a controlled substance beyond a reasonable doubt. 

Having
determined that the evidence is legally sufficient to support the verdict, we
address factual sufficiency.  We must consider all of the evidence in a neutral
light.  See Laster, 275 S.W.2d at 518.  In conducting our review,
we note that Christopher Strawn, one of the men inside the mobile home,
testified that Appellant did not have a bag with him when he arrived. However,
Hargett testified to the contrary. Strawn also stated that Appellant was there
to purchase a laptop from Hargett. Davelyn Barton, Appellant’s mother,
testified that she had given Appellant $1,000 that morning to buy Christmas
presents, and that he had sold a car for approximately $1,200.  However, in
reviewing the entire record, we do not find that the evidence supporting the
conviction is too weak to support the jury’s verdict, or considering the
conflicting evidence, that the jury’s verdict is against the great weight and
preponderance of the evidence. See id.  Accordingly,
Appellant=s second issue is overruled.

 

Conclusion

Based
upon our review of the record, we conclude that the trial court did not err in
denying Appellant=s motion to suppress. 
Further, we hold that the evidence is both legally and factually sufficient to
support the jury=s verdict that
Appellant was guilty of possession of a controlled substance, methamphetamine,
in the amount of less than one gram.  Accordingly, the judgment of the trial
court is affirmed.

 

                                                                                                    Brian Hoyle

                                                                                                       
Justice

 

Opinion delivered August 25,
2010.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)

 









[1] See Tex.
Health & Safety Code Ann. § 481.112(a)
(Vernon 2010).





[2] An offense under section 481.112(a) is a state jail
felony.  Tex. Health & Safety Code
Ann. § 481.112(b). Appellant pleaded true to the enhancement
allegations that he had two prior felony convictions.  Because the enhancement
allegations were found to be true, Appellant was punished for a second degree
felony.  See Tex. Penal Code Ann.
§12.42(a)(2) (Vernon Supp. 2009).  An individual adjudged guilty of a
second degree felony shall be punished by imprisonment for any term of not more
than twenty years or less than two years and, in addition, a fine not to exceed
$10,000.  Tex. Penal Code Ann. §12.33
(Vernon Supp. 2009).





[3] See Tex.
Code Crim. Proc. Ann. art.
42.12, § 3(a)  (Vernon Supp. 2009).